Please go ahead. Morning, my name is Eric Seitz. I represent the appellant in this case. The appellant is here, Mr. Smith. I just wanted to indicate and point him out to the court. In 1989, I convinced another panel of this court to affirm a holding of a district court judge in Hawaii that the City and County of Honolulu had a people for up to 48 hours and focusing on that 48th hour deadline rather than releasing people who were arrested without warrants when it was determined that the administrative steps were completed. So what's the evidence of animus in this case? All I see is that there was some sort of a snafu within the court system that delayed the processing. Anything more than that? Oh yes. In the record? Oh yes. If you see repeatedly, my client was allowed to be referred to by witnesses in arguments as a major drug dealer in Hawaii and they made that argument repeatedly and then argued to the jury that because he's a bad guy, he's lucky that he only served two days and that he was never actually prosecuted. That's the animus. I was focusing on the 48 hour argument. I thought you were leading with that and if I misunderstood you, I apologize. I was referring to the specifics. As far as 48 hours is concerned, I mean basically there's been an evolution. In Gerstein v. Pugh, the Supreme Court held for the first time that a person who's arrested without a warrant has to be promptly taken before a magistrate. They did not define promptly. The next major case in the area was Riverside, at least as far as the Supreme Court is concerned, and in the Supreme Court simply tinkered with what Gerstein v. Pugh had said and clarified that the first 48 hours, there will be a presumption of reasonableness, but after that, the presumption changes. But the decision at Riverside did not hold. Here it was 43 hours. Actually, it was either 45 or 47 hours, depending upon... At least it's under 48. It's under 48, that's correct. But I'm still, I don't think you've answered the original question, and that is, what is the evidence of animus, in other words, some sort of mischievous intent by the police... In this case. ...to deprive him of a prompt hearing? Sure. First of all, my client was arrested at his house with a substance that was delivered to him. He was taken to the Honolulu Police Department and was held, as you heard, for that period of time. They made no effort to question him during that period of time. But they made a probable cause, I guess, what was it, the document, I forgot what the document is called, and they made that out right after they picked him up. Isn't that correct? Yes, but they didn't take it to a judge and get a determination of probable cause. And then when they got... So they had a position that they had probable cause to hold him, and then when they finally got it to the judge, or finally got to the judge, whatever, we don't know what caused the delay, they hadn't made any changes to it. So the concern that was expressed in McLaughlin in our case, Concoa, was that somebody is being held without probable cause while the police are out basically building up their case. And that wasn't the case here. Yes, it was. Well, they didn't change, and the information they had to support the probable cause determination didn't change during those intervening two days. Not as far as the police were concerned, but let me elaborate. First of all, during those two days, they raided his two stores and arrested two more people. They tried to make buys of other drugs to build a case against him. Has any of that submitted in the application for the judicial determination of probable cause? No. Secondly... Well, doesn't that cause a disconnect in your case? No. Because they're not precluded from doing is gathering things to justify the probable cause, but they've already turned in their application for probable cause. But the key thing here is that they said that they had to help hold him because they had to do laboratory testing. You remember, that's what they said. And the evidence that was presented through the person who was to do the laboratory testing was that she couldn't do it, and she told them that because she didn't have a sample to test and to compare to what they had seized. So no matter what happened in that 48 hours or four days or five days or seven days, it would have been impossible to complete the laboratory testing. And the police knew that from the outset. I thought they did finally get the test results the morning of the 14th. That's what I saw from the timeline that the laboratory testing confirmed the MDPV. They got it long after the 48 hours. Well, so, according to my notes, it was that Thursday, April 14th at 10 a.m. right before they released him. Well, again, what I'm saying to you is... Is that not correct? I don't believe that is correct. I think she testified that she made a preliminary determination, but that she didn't get the sample that she needed to make an actual comparison until some weeks later. She testified, I reported my findings to Officer Liu around 10 in the morning. Now, they continued testing after that, but there was information that was communicated. I understand. There was some information. But again, in this case, first of all, if you go back to what he was arrested for, he was arrested for a drug that was questionably illegal at that point in time. It was not illegal under federal law, and we contend that it was never illegal under state law either because of the manner in which they just posted a notice on a bulletin board, and that's the way they... Well, you're kind of moving to another issue, which is fine, but that really doesn't satisfy the questions that have been posed for the first issue. So, be aware as you move elsewhere, we still got that first issue sitting there. I'm talking about unreasonableness in the first place. What I'm suggesting to you is this was a sloppy operation. They believed my client was a major drug dealer. They arrested him and they held him for, we believe, 47 hours. We believe that holding him for that period of time was unreasonable per se under the circumstances of this case, and that the judge should have determined that as a matter of law. Wait a minute. If you're going to apply the per se rule, the per se rule is 48 hours, and this was less than 48 hours, so it seems to me the obligations on your side to establish that there was some sort of animus or some purposeful detention here. Yes. I'm still looking for it in the record and I haven't found it yet. Well, again, I think you look for it in the record by the way they characterized him as a major drug dealer, although there was never any evidence of that. You look at it... What is that? Go ahead. No, please. I guess one question I had reading the record was you want to suggest that there was some benefit to the police for holding him for that period of time. Now, based on the record, there wasn't any benefit in in creating their case for probable cause, so why was there a benefit for holding him rather than releasing him because they could have gone and done their investigations. They got the search warrants for the stores and the like, so what is your theory of why they would have held him for extra time? Because they were punishing him. They were incarcerating him in an isolation cell with no contact with the external world for two days. So the purpose, in your view, was punishment? Absolutely. They had personal animus against him? Yes, absolutely, and I again... Is there evidence in the record of animus or punishment? I think that animus comes out in every other word that was uttered to the judge about what a bad criminal this guy was and how the jury wasn't persuaded. Well, the jury wasn't persuaded because the jury really had no guidance as to what constituted a reasonable detention after the administrative steps were completed. In this, there's no point to holding this guy after they initially booked him and he cooperated in every respect. He could have been sent home at that point, but the police don't do that. And again, if you look at Major Robinson's testimony, there were two major components to that. One was how this guy is a really bad guy and we had a duty to keep him off the streets. That's what he said. And the other was that I have promulgated a written policy which says that once we get a determination of probable cause, we can keep him and we can continue to investigate in order to build a case against him. Well, in the first place here, they had not had a determination of probable cause. They didn't get that until just before they released him. So all of that detention up to that point was questionable. And under the circumstances of this case, I don't believe the Constitution, under the best of circumstances, allows for a citizen to be arrested because the police think he's a bad guy, to be held in custody for almost two days, and then to be released and never even charged. If I'm correct about the standard of review, this is denial of a motion for a new trial that you're appealing, correct? No, we're also appealing from the denial of the motion for summary judgment and for the motion for a directed verdict which we made on the ground of the unreasonableness of the detention. All three of those motions echoed the same issues. We also have problems with the jury, we have problems with the instructions about not admitting him to bail or even considering bail, and there are a couple of other issues which I That's reversible only if the record contains no evidence in support of the verdict. That's correct. So you would have to disprove that there was any evidence that would support a determination that your client didn't carry his burden of showing that he couldn't be detained. Yes, and based upon that, I argued to you that after the administrative steps were completed, he was booked, he was identified, his identity was verified, and they had the opportunity to question him, which they chose not to do, that after those steps were done under CONECOA, which is still good law. That allowed for lab investigations and to delay the interview until after they got the results. Well, it's not clear. In CONECOA, the delay of the interview was because the two men were intoxicated, and the court said that they could be held for 14 hours in that case, and that was all we were arguing about. But here, there was no reason why they could not have interviewed Mr. Smith. They wanted to conduct searches and arrest people at his stores. They wanted to interrogate those people to see if they had any evidence against Mr. Smith, and they never developed a case. Now, I would ask you to contrast that to what happened, and there's evidence in the record with regard to that, when the feds executed a search warrant at his house. They went in, they searched, they completed, they said, thank you very much. They took what they had, and they went back, and they investigated, and he never heard from them again. But this process in Honolulu deprives citizens of the most basic protections, and in this case, my client was arrested, his property was seized and held for months, his truck, his money, and the police basically did everything they could to make his life miserable without any basis for ever charging him with a crime. I'm going to save some time for rebuttal. I would like to save two minutes, but I'll save the additional seconds as well. Thank you. Good morning, Your Honors. My name is Curtis Sherwood. I'm Deputy Corporation Counsel for the City and County of Honolulu, and I represent the appellee City and County of Honolulu in this appeal. May it please the Court. As is evident, this appeal presents one salient issue and a host of several minor issues for the Court's consideration. The chief issue for the Court's concern is the period of Mr. Smith's detention, and whether, as Mr. Smith contends, there was no basis for the jury's determination that Mr. Smith's detention was reasonable because of the presumption that the City's entitled to where we're dealing with a period less than 48 hours. I understand that there has been some contentions, some arguments made this morning, and there were arguments made in the appellant's brief that the City may have exceeded 48 hours. That was not the testimony at trial. In fact, the trial court judge referred several times to a 46-hour and 10-minute period, which a plaintiff was held for, and there was no objection to that or no objection to it being referred to as a stipulated period. It was 46 hours and 10 minutes for the entire time he was held in custody. Was there any reason that they needed to hold him for that amount of time? I mean, in all of the other cases, there was either processing, there was a delay because they couldn't get the judge, the person was to interview him after he was drunk, they were trying to clear his name, they were trying to do additional investigation to maybe release the person. Here, I didn't see anything in the record explaining why they detained him for that extra period of time other than this mysterious, we don't know why, but somehow the probable cause determination didn't get to the judge. Okay, so there's two issues there, Your Honor. Why they chose to hold him for the period of time and why the JDPC got signed when it did. And you're right, there is some mystery as to why that occurred when it, why it was signed when it was. The officer testified that he promptly filled that form out upon returning to the police station and that he submitted it where it needed to go for the next day's court run. And the HPD sends these things over twice a day with the morning court run and the afternoon court run. And so it should have gone over the following day with a morning court run. But no one knew why and there wasn't an investigation of why, so there was no evidence presented on why. So all we know is somehow, for some reason, it didn't get signed for two days. That's correct, Your Honor. Is there a need to hold him until it is signed? Well, Your Honor, why they held the particular plaintiff in this case was they wanted to, they wanted to interrogate him, but they also wanted to have all the evidence when they did so. It's a regular interrogation technique. You don't want to be caught by surprise by something that the the suspect says when you interrogate him. They had the evidence that there was a package that preliminary test showed had a drug, an illegal drug. There was a controlled delivery. He took the package and gave them the money. There was a preliminary results of the other materials inside of his apartment as also being positive for the illegal drug. So what was this very, very important information that the police didn't have that they absolutely needed to get before they interrogated him? First of all, Your Honor, I think the preliminary determination with respect to the items recovered from his property, both in his carport and in his home office, I think they only got a preliminary determination on one of those substances, and that was the second day on the 13th. Secondly, why did they have to keep him after that? Well, they were still waiting to make sure that the substance, the original substance, the bath salts, the MDPV, was in fact MDPV. They were waiting for the they were expecting it any day. In fact, it did come on the 13th. The technician put it in the machine for testing that evening, came back the following morning. What she did was she ran the comparison sample that came through the mail with the other, with the evidence recovered from plaintiff's property, and that morning was able to confirm that it was the same substance. And right after that, she testified that it was around 10 a.m. They had already done some interviews of the plaintiff's employees at that time. I think they had one other interview after that, and then they interviewed plaintiff, and he promptly invoked his Fifth Amendment right, and within... So he was held for two days for no discernible reason? I mean, in the end, I'm still puzzled because of the application for the determination of probable cause consists of evidence they had at the beginning, and you argued that he wasn't held for the purpose of establishing probable cause. It's to be hard to figure out then why he was held. They had what they thought they needed. They turned that into the court. For some reason, it took a couple of days to get back. In the meantime, they're holding him in the hopes that maybe he'll be able to interrogate him, except if he's got the right to not to testify. I'm still puzzled as to what's the point of being locked up for the extra hours. They're doing the testing, Your Honor, and they're doing their necessary paperwork. They're trying to figure out... The paperwork is done if the JDPC has been submitted, isn't it? Yes, for the JDPC, Your Honor. Okay, so that's done on the first day. But they had a lot of evidence to process and their reports to write, and they had to get an understanding of what crimes were actually being committed. They didn't know until they arrived at plaintiff's property exactly the extent of the dangerous drug first charge until they got there. And when they got there, they found it was a much larger enterprise than what they had initially understood it to be. So they wanted to thoroughly understand it before they interrogated the plaintiff. I'm having trouble with the time on the 12th, and apparently there was an application signed that day. Now, normally, he would have appeared before a judge the following morning, would he not? Wouldn't that be the traditional, typical way of handling this? I don't know about his appearance, Your Honor. Definitely the JDPC would have on the following day, that's correct. Well, then, why wasn't he released then, on that same day, the following day? He wasn't released until the third day, correct? The 14th, at 8 o'clock, 8.33 in the morning. Excuse me, 8.07 in the morning. Not until the afternoon of the 4th. I got 12.45 on mine, so. 12.45, that's correct. Well, the judge signed the application at 8.07. 8.07, that's correct, Your Honor. Well, that should have triggered something fairly promptly after that. Yes, Your Honor. I think what the officers were trying to decide is what charges to charge him with. They originally believed it was the one charge having to do with basalts, but then they came across all these other charges that were involved. And so they wanted to confer with a prosecutor to figure out what charge was going to take place. And part of that was what evidence they were going to get from the interviewing plaintiff himself. Which never really took place, because this probably could have been anticipated. He elected not to say anything. Well, he elected not to, Your Honor. But, I mean, police don't know exactly what's going to happen. And the other two employees opted to make statements to the police officers. I'd like to address some of the other points raised by plaintiff. Specifically, the property seizure instruction, as well as the bail instruction. As the court's aware, with respect to the jury's instructions, the court needs to look at those as a whole. With respect to the property seizure instruction, the judge was correct in characterizing this as somewhat of a surprise, because plaintiffs were trying to argue an excessive property detention claim. And the court's characterization of it as a surprise is correct. But really, the better ground for this court and for the district court to have denied it was, there simply was no evidence to support any Monell claim on a property seizure claim. But was the property taken under Hawaii forfeiture law? I saw in the record that there was a . . . So what are the rules with respect to Hawaii forfeiture law with how long you can detain property or what the correct procedures are? I'm not well versed in that, Your Honor, because it really wasn't an issue at trial. Plaintiffs didn't call the property forfeiture officer. And there was no evidence of any policy, practice, or procedure regarding forfeiture or how long property would be held. So there really wasn't any evidence for that claim. So there was no challenge to forfeiture, to the seizing of the property under Hawaii forfeiture law. Is that correct or was there? There was an initial status conference that was called in which they had threatened a preliminary injunction. But that matter resolved early in the case. And if the court looks at the motion for summary judgment, there was absolutely no discussion in plaintiff's opposition to our motion for judgment on the pleadings about any property seizure claim. With respect to the instruction on the right to bail, Your Honor, as the court's aware, the federal law on this is essentially that there is no right to bail. But plaintiffs rely on the Eli case and the Oviatt v. Pierce case. And I would simply state that the Oviatt v. Pierce case does not extend a 1983 cause of action to bail here because Oviatt v. Pierce has two requirements. One, that the ruling or the legal holding contain mandatory language, and two, that it include particularized standards. And it specifically said, with respect to particularized standards, that there's no room for discretion. So Oviatt was dealing with a situation where a person was held over 120 days. There were two state statutes that said it was unlawful to hold somebody 36 hours without arraigning them and unlawful to hold somebody over 50 or 60 days, I cannot recall, without bringing them to court. And so they had specific particularized standards in Oviatt, which is not the Pierce case. The Pierce case says, quote, a person arrested for a petty misdemeanor or misdemeanor offense possesses not an absolute right, but rather a right to release without unnecessary delay upon payment of bail. So this case, we're talking about a Class A felony, which, first of all, is not automatically entitled to bail. It's considered a serious offense and it's distinguishable from a misdemeanor. You also have a number of policy arguments behind misdemeanor rights to bail as opposed to rights to bail in serious felonies. Because oftentimes, if the person is not allowed to bail out, they're going to be serving a lot more time than they ultimately will be sentenced. I want to ask you a question about this dismissal of the juror. Yes, Your Honor. It appears that several jurors said that the disagreement, which prompted the issue, stemmed from his views on the case rather than physically threatening. What should we do with that? Your Honor, I believe the overwhelming majority of the testimony was because he had physically threatened one juror and yelled at another juror. The testimony was, in fact, that he had personal issues with the jurors in addition to his views. I don't believe . . . The problem is, if it's based on his views, then that is subject to very serious concern here. Well, Your Honor, we had a hearing on this. Both counsel were allowed to cross-examine or examine the jurors. The court conducted its own questioning. After that hearing, plaintiff's counsel stipulated to the dismissal of the juror to raise this issue again and offered hearsay testimony, which was inadmissible. I don't believe that there's a sufficient basis in the record for . . . I understand the court's concern, but I don't believe there's sufficient basis in the record for that concern. Even if there was, plaintiff stipulated to the dismissal of that juror. It's plain error anyway. Yes, Your Honor. Your Honor, I seem to have used all my time. Thank you very much. Thank you. Rebuttal. Judge Oscana, let me address your initial question to counsel. With regard to the procedure in Hawaii, an individual who's being held, who was arrested without a warrant, is never taken to court until that person is charged. They don't charge them because once they charge them, then bail is set. That's why this device is so dangerous. The person is held there incommunicado, is not taken to court, and there is no procedure whatsoever to set bail. I fully understand that, and I share your concern. The problem I have is where do you draw the line? I'm looking for actual evidence in the record that this delay was caused by some animus by the police department or some evidence of actual interference. I think you can find that in the trial transcripts and to the belief on the part of the police that my client, though never charged, was by their belief a major drug dealer, and they needed to keep him. But is the belief enough? Is that in the record? Yes, it is. That's what motivated them. And Major Robinson's testimony on that point, I think, is quite clear, and I would urge you to read that. But is that compelling so far as the jury is concerned? Well, apparently not, and again, that goes back to the question about why a jury decided the reasonableness of detention. I think that's a legal issue that should have been decided by the judge. I want to mention a couple more things just quickly. First of all, I don't agree that there was any justification for the court not to give the bail instruction. And if you look at the Eli case, which we cited to you, which was decided by Judge Kaye in similar circumstances involving a hold of this sort, Judge Kaye said the right to bail should have been implicated immediately. And that's not a question of statute. That's a constitutional right, both federally and under the state constitution. And bail was never afforded to my client and never is afforded to people who are being held under these circumstances. Lastly, I would like to argue about the jury situation because I think that was error, and I think basically we didn't know what we were dealing with. We were in a hearing where the judge called and put jurors on the stand, and to be honest with you, I was very wary about questioning any of them. And we didn't really know what happened until the person who had been excused, who, by the way, was the foreperson, contacted my office and explained what had happened. I didn't see any declaration from that individual in the record. No, there's no declaration from him. There's a declaration from me as to what he told me when we were asking the court to conduct a post-trial evidentiary hearing, and the court declined to do so. My time has expired. I just want to make one other point. And I want to refer you to some language from the United States Supreme Court in a case entitled Manuel v. City of Joliet, which was just decided 10 months ago. And in that case, the court said, the court looks to the Fourth Amendment to analyze and uphold a claim that a pretrial restraint on liberty is unlawful unless a judge or grand jury first makes a reliable finding a probable cause. The Fourth Amendment establishes the minimum constitutional standards and procedures not just for arrest but also for ensuing detention. That is the law. And in this case, my client was arrested. Whether there was probable cause or not, we might argue about, given the nature of what he was arrested for. But certainly, there was no probable cause for the prolonged detention. And there was no judicial determination for much of that time while he was being held. Thank you for your indulgence. I thank both sides for their argument. In the case of Smith v. City and County of Honolulu is submitted, and we're adjourned for this session. Bye-bye.
judges: O'scannlain, Clifton, Ikuta